BARRY J. PORTMAN
Federal Public Defender
JOYCE LEAVITT
Assistant Federal Public Defender
555 - 12th Street, Suite 650
Oakland, CA 94607-3627
Telephone: (510) 637-3500

Counsel for Defendant BACA RUIZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-00285 CW |
| Plaintiff, | ) | |
| | ) | **DEFENDANT BACA RUIZ'S** |
| vs. | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| ROLANDO BACA RUIZ, | ) | Date: November 7, 2007 |
| | ) | Time: 2:30 p.m. |
| Defendant. | ) | Courtroom No. 2 |
| _____ | ) | |

## INTRODUCTION

On August 22, 2007, defendant Rolando Baca Ruiz pled guilty to 8 U.S.C. §1326 - illegal re-entry after deportation. He will be sentenced by this Court on November 7, 2007. A presentence report ("PSR") was prepared by United States Probation Officer ("USPO") Constance Cook in which she calculates the presumptive guideline range to be 77-96 months. PSR, Sentencing Recommendation. She recommends that Mr. Baca Ruiz be sentenced to 80 months in custody. *Id.* Mr. Baca Ruiz asks the Court to sentence him to 42 months in custody. There are many mitigating factors which warrant a sentence of 42 months.

*United States v. Baca Ruiz*, CR 07-00285 CW
Defendant's Sentencing Memorandum

1    First, the nature and circumstances of Mr. Baca Ruiz warrant a sentence of 42 months.

2    Rolando has lived in the United States since he was a young boy and he has five sons and a wife,

3    all of whom are American citizens.  The family is very close and when Rolando was last

4    deported, his wife and two younger sons moved to Tijuana, Mexico with Rolando.  Ultimately,

5    Ms. Baca Ruiz missed her three older boys who had remained in the United States and returned

6    to the states months later.  However, the family takes Rolando's situation very seriously and the

7    entire family intends to move to Mexico this time after Mr. Baca Ruiz completes his sentence

8    and is deported.

9    Furthermore, Rolando's criminal history is overstated with the majority of his criminal

10    history points coming from offenses which date back nine years.  Other criminal history points

11    come from prior illegal re-entry convictions and Rolando and his family intend to stay in

12    Mexico.  Sentencing purposes of just punishment, adequate deterrence and protection of the

13    public all are served by a sentence of 42 months.

14    Finally, a sentence of 42 months is appropriate in a case where assistants from the United

15    States Attorney's Office in this district have twice determined that Mr. Baca Ruiz' criminal

16    history and personal circumstances warranted a fast track disposition, first of 24 months and then

17    of 30 months.  It is understandable that the office is not willing to offer another fast-track

18    disposition.  However, it is hard to fathom how the special assistant in this case is able to point to

19    the very same criminal convictions which two assistants previously reviewed, many of which

20    date back well over ten years, to argue that the same convictions which previously warranted 24

21    month and 30 month sentences, now warrant a sentence of 96 months, which is more than triple

22    the last sentence recommended by the office.

23    Mr. Baca Ruiz urges the Court to sentence him to 42 months in custody.  He submits this

24    sentencing memorandum in support of his request.  Attached to the sentencing memorandum are

25                                                                    - 2 -

26    *United States v. Baca Ruiz*, CR 07-00285 CW
Defendant's Sentencing Memorandum

1  (1) letter from Rolando Baca Ruiz (Exhibit A); (2) letter from wife Kelly Diane Baca (Exhibit

2  B); (3) letter from son Rolando Baca Jr. (Exhibit C); (4) letter from son Julio Ceasar Baca

3  (Exhibit D); (5) letter from son Edgar Baca (Exhibit E); (6) letter from nephew Eladio Jimenez

4  Baca (Exhibit F); (7) letter from from niece Eva Delgadillo (Exhibit G);(8) letter from

5  acquaintance Eugenia Dolianitis (Exhibit H); (9) letter from friend Hellan Agnuiano (Exhibit I);

6  (10) letter from friend Peter Dolianitis (Exhibit J); (11) letter from John Olachea operations

7  manager of Vallecitos Center for Employment Training (Exhibit K).

8  **BACKGROUND**

9  **A.      Prior Criminal History**

10     Mr. Baca Ruiz has fifteen countable criminal history points.  Six of the criminal points

11  are attributable to two prior illegal re-entry convictions. PSR ¶¶39, 40.  Only two criminal

12  history points are based upon one offense which was committed within the last five years, and

13  eight of the criminal history points relate to offenses committed over nine years ago. *Id*. at ¶¶36-

14  42.

15     Seven of the criminal points are attributable to misdemeanor offenses relating to threats

16  towards his wife, Kelly, or related violations of protective orders.  *Id*. at ¶¶36-38, 42   Although

17  not acceptable behavior, the actions are somewhat mitigated by the fact that Rolando's actions

18  are verbal, and he has never hurt, hit or touched his wife and that Kelly has remained close and

19  moved to have the protective order removed.  Exhibit A.  Rolando has been married to Kelly for

20  26 years and Kelly writes this:

21          In 1989, my husband was employed with a painting company, and
           . . . fell off a 8 foot ladder.  That caused tremendous damage to his
22          back. . . . All of our martial [sic] problems is because of his
           addiction. . . In November 2006, I did have a restraining order
23          against him because he was being verbally abusive . . . have since
           petitioned the Hayward courts to have that removed.  I want to
24          make clear to you with all our fights over the years, he has never
           physically hurt, hit or touched me with his hand.  It has always
25          been verbally.

26  *United States v. Baca Ruiz*, CR 07-00285 CW
   Defendant's Sentencing Memorandum

1  Exhibit B.  Although there is some evidence of drug use in the PSR prior to 1989, according to

2  Kelly it was after his accident that things got worse.  *Id*.

3      Given the fact that eight of his countable criminal history points date back nine years and

4  only two points relate to an offense committed within the past five years, as well as his current

5  age of 48 years old, Criminal History VI overstates the seriousness of Rolando's criminal history

6  and the likelihood that he will commit crimes in the future.  The Court should view Mr. Baca

7  Ruiz' presumptive guideline range using a criminal history category of IV.  This would result in

8  a presumptive guideline range of 57-71 months.

9      **B.    Personal History**

10     Rolando Baca Ruiz is a 48 year old man who was born in Mexico.  Rolando was one of

11  eight children and his family was poor.  PSR ¶52, 53.  Because of this he worked from a very

12  early age and has only an elementary school education.  *Id*. at p.2., ¶53.  He ultimately came to

13  the United States when he was approximately twelve to fourteen years old.  Exhibit A.

14     Rolando married his wife Kelly when he was 21 years old and they have been together

15  for 26 years.  Exhibit A.  The letters from Rolando and his family members make it clear that he

16  is a hard worker and a dedicated family man.  Kelly writes:

17          We have five sons, Rolando, Julio, Edgar, Marcos and Luis . . . I
            met Rolando in 1980 and have known him to be a hard worker
18          with good family values.  We got baptized in the . . .church . . .and
            have been members ever since.  Rolando is a talented painter and
19          has 21 years experience at this occupation . .Rolando Jr. is a
            bartender, Julio is a landscaper, Edgar is a student and works part
20          time at Walgreens, Marco and Luis are students. . . I love my
            family very much, and I love my husband very much.  I believe in
21          him.

22  Exhibit B.  Rolando Jr. writes this about his father:

23          I know my father as a hard worker, willing to travel to Reno
            Nevada to go paint if that was what was offered. . . He has taught
24          all of my brothers to paint and work hard for a living. . . I know my
            father as a man.  Someone who is faced with great difficulties, and

25                                          - 4 -

26  *United States v. Baca Ruiz*, CR 07-00285 CW
    Defendant's Sentencing Memorandum

1
2
3
4

yet I never see him give up.  He wants the best for his kids. . . It's a
hardship to have my father be in jail, facing deportation.  It's a
burden when I hear my father telling me to stay strong, be the man
of the house. . . I believe every child needs their father growing up.
. . My parents believe in family, commitment and we are all trying
hard to stay together.

5    Exhibit C.  Julio says this about his father:

6
7
8
9
10

I have lived with my parents my whole life.  I believe in loyalty,
respect and commitment.  To me, that equals marriage and that
equals my parents.  I am grateful for a father who continues to try
and keep us together as a family . . . Sometimes when I am wade
[sic] down with emotions, thinking of our future as a family and
just as a young man trying to find my path in life, I think of my
fathers words to me.  Always encouraging, believing in me,
wanting the best for me.  To me, that's what it takes for me to keep
walking towards a better life . . .  I am sad for the place my father
is at.  But I know things will get better.

11    Exhibit D.  Finally, Rolando's 18 year old son writes this:

12
13
14
15
16
17
18

I am a student and work part time.  My father has lived with me
my whole life.  I know my father as a American.  This is all we
know, the United States.  I know my father as a hard worker, a
family man that loves his family.  He has taken me to school,
picked me up from school, he has been there for me growing up
through my teen years.  My dad has taken me to work, taught me
to work as a painter.  He has taken me to church and he has taught
me to respect myself and to respect others.  My dad has taken me
on vacations to Disneyland. . . I am proud of who I am because of
my father and mother always being there for me.  And I admired
my father because he never gives up.  I know my dad has some
problems, but I love him.. . . Especially since we've lived in
America our whole lives.

19    Exhibit E.   Other relatives and friends of Rolando echo his family's sentiments regarding his

20    commitment to his family and leadership.  See, e.g.  Exhibit F ("My uncle has helped me find

21    work. . . He made it possible for me to get back on my feet."); Exhibit G ("my uncle believed in

22    me. . . made sure I had a place to stay with him and his family . . . that extra emotional help. . .

23    really made a difference in my life.  I graduated from American High School. . . now I'm . .

24    .working full time at Safeway, studying to be a butcher."); Exhibit H ("He shows himself to be a

25    family man and a hard worker.  Very respectful to others and helpful"); Exhibit J ("Rolando is a

26    *United States v. Baca Ruiz*, CR 07-00285 CW
       Defendant's Sentencing Memorandum

good man. Very loyal to his family and a hard worker."); Exhibit K ("A decent young man who strived to improve his life and be a productive member of the community.")

It is unusual that Rolando has remained such a strong and supportive presence to his family, especially given the difficult circumstances of his illegal status.  Yet, his wife and children have made it clear that the family intends to move to Mexico with Rolando after he is deported.

C.    **Offense  Conduct, Prior Fast Track Dispositions and Plans to Live in Mexico**

**(i) Prior fast-track dispositions**

Defendant Rolando Baca Ruiz pled guilty to a felony violation of 8 U.S.C. §1326 - illegal re-entry after deportation.  He has two prior convictions for this offense in this district.  Both times, the Assistant United States Attorney (AUSA) weighed the circumstances, reviewed Mr. Baca Ruiz' prior criminal history and determined that a fast-track disposition was appropriate. PSR ¶¶39, 40.  Much of the criminal history reviewed previously by AUSAs in this district is precisely what the special AUSA currently points to in arguing for a sentence of 96 months. While it is understandable that another fast track is not being offered, it is not understandable that the current sentencing recommendation is more than triple the last sentencing recommendation.

**(ii) Rolando and his family's plan to live in Mexico**

Rolando Baca Ruiz and his family understands that he may not return to the United States and after his last deportation he and some of his family moved to Mexico to try and make a life there.  Exhibit A.  It was extraordinarily difficult according to Kelly:

> The last time Rolando was deported, I moved with him to Mexico. Our three older sons stayed here in California, Edgar wanted to stay in high school and graduate at James Logan High.  But I did bring Marcos and Luis with me.  We lived in an apartment in Tijuana.  And my husband enrolled the children in school. Rolando worked in a factory making furniture during the day and

- 6 -

*United States v. Baca Ruiz*, CR 07-00285 CW
Defendant's Sentencing Memorandum

at night he was a security guard . . . It was a difficult transition for all of us and we did out [sic] best to go forward. . . There were quit [sic] a few American kids going to the same school, living the same life . . . Before the children were able to attend the school, the principal told us how he felt about all of the American children entering his school. He felt that all the American children were distrustful . . . I let our children finish their school year out and decided to go back to California . . . I do understand that my husband will be deported again. We are planning to make the move back to Mexico and live as a family.

Exhibit B. Rolando says this:

I respect the decision of your court and will resolved my self to its wishes upon my release (1) will move back to Mexico upon my release as order by the court 2) my wife is already looking for job possibilities in Cabo San Lucas B.C. Mexico and we plan to live as a family of seven once again upon my release and deportation to Mexico.

Exhibit A.

Rolando and his family know the difficult reality of moving an American family to Mexico because they have done it once before. Nonetheless, the Baca Ruiz family is a very close family and the entire family, including the older sons, plans to move to Mexico, so that they can remain a family. *See, e.g.*, Exhibit C ("My parents believe in family, commitment and we are all trying hard to stay together."); Exhibit D ("We are a family and we stick together. I've excepted [sic] that he will get deported and when he is able, he will send for us! I hope that day comes real soon.").

Rolando Baca Ruiz understands that he must make a life for himself outside of the United States. He takes this very seriously and so does his family. Given his extraordinarily close family ties and young sons who still depend upon him, the Court should consider a lesser sentence.

## DISCUSSION

### A.    Criminal History Category VI Is Overstated

USSG §4A1.3(b) provides that:

*United States v. Baca Ruiz*, CR 07-00285 CW
Defendant's Sentencing Memorandum

> If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

USSG §4A1.3(b).

In the present case, Rolando Baca Ruiz's criminal history significantly over-represents the likelihood that he will commit other crimes in the future. Although Mr. Baca Ruiz has fifteen countable criminal history points, only two criminal history points are based upon one offense which was committed within the last five years, and eight of the criminal history points relate to offenses committed over nine years ago. *Id*. at ¶¶36-42. His history is overstated.

Six of the criminal points are attributable to two prior illegal re-entry convictions. PSR ¶¶39, 40. This is significant because both Mr. Baca Ruis and his wife, Kelly, have made it clear in their letters to the Court that they intend to move the family to Mexico so that Rolando will not be placed in the position of chosing between returning illegally or saying goodbye to his family. Given the fact that the family intends to move to Mexico, the likelihood of Mr. Baca Ruiz returning illegally is greatly reduced.

In addition, seven of the criminal points are attributable to misdemeanor offenses relating to threats towards his wife, Kelly, or violations of protective orders. *Id*. at ¶¶36-38, 42.

But Kelly clearly explains in her letter that Rolando has never laid a hand on her. Instead, he has been verbally abusive. Exhibit A. Mr. Baca Ruiz does not pretend that this aggressive behavior is, in any way, acceptable. He knows that it is not. He intends to continue working on his temper and recognizes how destructive it is to his wife and the family. Yet, the seven points which he has amassed because of his interactions with Kelly, alone, move him three criminal history categories. In these circumstances, the final criminal history category overstates the seriousness of his prior convictions and the likelihood of recidivism and should be reduced.

- 8 -

*United States v. Baca Ruiz*, CR 07-00285 CW
Defendant's Sentencing Memorandum

1    Furthermore, Mr. Baca Ruiz is 48 years old and there is literature which indicates that

2    the likelihood of recidivism decreases with age.  For these reasons, his criminal history is

3    overstated.  The Court should more properly sentence him based upon a Criminal history

4    IV, not VI.  *See, e.g. United States v. Wadena*, 470 F.3d 735 (8th Cir. 2006)(proper to depart to

5    probation in case of 67 year old defendant convicted of fraud where guidelines were 18-24

6    months in part, because of age); *Measuring Recidivism: The Criminal History Computation of*

7    *the Federal Sentencing Guidelines*, at 12, 28,  (2004)

8    www.ussc.gov/publicat/Recidivism_General.pdf. ("Recidivism rates decline relatively

9    consistently as age increases," from 35.5% under age 21 to 9.5% over 50").  Because Mr.

10   Baca Ruiz's criminal history category significantly over-represents the likelihood that he will

11   commit further crimes, the Court should reduce Mr. Baca Ruiz's presumptive sentence using

12   Criminal History IV not VI.

13   **B.    A Sentence of Forty Two Months in Custody is Sufficient, But Not Greater Than Necessary, to Satisfy the Goals of Sentencing**

14
15   After *United States v. Booker*, 125 S. Ct. 738, 756-57 (2005), the guidelines are no longer

16   binding on the Court.   *Booker* clarifies that the Guidelines are simply one of a number of the

17   factors a court must consider in imposing sentence.  125 S. Ct. at 764.  In addition, courts are

18   required to consider all of the factors listed in 18 U.S.C. § 3553(a) in imposing sentence.  *Id.*

19   The primary directive in §3553(a) is that the Court must impose a sentence that is

20   "sufficient, but not greater than necessary, to comply with" the purposes of sentencing.  *See* 18

21   U.S.C. §3553(a).  In this case, a sentence of 42 months in custody is such a sentence.  It is more

22   than 12 months greater than what Mr. Baca Ruiz served for his last illegal re-entry conviction.  It

23   is certainly more appropriate than the special assistant's request that the Court more than triple

24   the last sentence which Mr. Baca Ruiz received for his last illegal re-entry conviction.  Some of

25   the factors which the Court should consider under §3553(a) are discussed below.

26   *United States v. Baca Ruiz*, CR 07-00285 CW
     Defendant's Sentencing Memorandum

1      **1.      Nature and Circumstances of the Offense**

2           The offense in this case involved Rolando Baca Ruiz returning to the United States

3      without permission after he had been deported.

4           Mr. Baca Ruiz, who is 48 years old, has lived in this country since he was just 12 or 14

5      years old.  Rolando's wife and five boys are all American citizens who live in this country and

6      who depend greatly on their husband/father.  Exhibits B-F.  Being in the country illegally is a

7      status offense.  Mr. Baca Ruiz committed the offense so that he could be with his family.  He

8      loves his children and they love and rely upon him.  *See, e.g.*, Exhibit B ("he has taught all of my

9      brothers to paint and work hard for a living."); Exhibit C ("I think of my father's words. . .

10     always encouraging, believing in me, wanting the best for me."); Exhibit D ("He has taken me to

11     school, picked me up from school he has been there for me growing up through my teen years.").

12     Rolando's reasons for committing the current offense, so that he can support his family, is a

13     mitigating factor for the Court to consider.

14          The crime for which Rolando is being sentenced is not a crime of violence.  In the past,

15     the government has agreed upon sentences of 24 months and 30 months as being appropriate.

16     Not much has changed since the last time the government made this determination.  While Mr.

17     Baca Ruiz recognizes the government's refusal to offer another fast track disposition, there is

18     little to warrant a tripling of the sentence.  Rather, a sentence of 42 months, which is a full year

19     more than the last sentence he received for this offense, is appropriate.

20     **2. The history and characteristics of Rolando Baca Ruiz**

21          In this case, the history and characteristics of Rolando Baca Ruiz warrant a sentence of

22     42 months.  The letters from his family reflect an individual who is hardworking, proud and

23     extremely loyal and devoted to his family.  *See, e.g.* Exhibits B -H.

24

25                                          - 10 -

26     *United States v. Baca Ruiz*, CR 07-00285 CW
       Defendant's Sentencing Memorandum

1    In addition, many of the Courts have granted sentences below the guidelines where an

2    alien is unusually acculturated into the American culture.  *See, e.g. United States v. Lipman*, 133

3    F.3d 726 (9th Cir. 1998)(in illegal reentry case, court has authority to downward depart on

4    ground that defendant had been "culturally assimilated" into American society.); *United States v.*

5    *Tzep-Mejia* (461 F.3d 522 (5th Cir. 2006)(in illegal reentry case, court imposed below-guideline

6    sentence where "defendant had been in the United States for several years and had a degree of

7    cultural assimilation"); *United States v. Castillo*, 386 F.3d 632 (5th Cir. 2004)(downward

8    departure in illegal reentry case based upon cultural assimilation was not plain error).

9    In the present case, Rolando has lived in the United States for at least 34 years and he

10    came here when he was a young boy.  Furthermore, the comments of his family make it clear

11    that Rolando is culturally assimilated.  Rolando Jr. writes this about his father:

12    I am an American citizen.  I know my father as a American.  I
      know my father as a family man, with vacations to Disneyland, 4th
13    of July BBQ's, Christmas, Thanksgiving get togethers and going to
      church.  All these things are a regular in our life.

14    Exhibit C.  Julio says this about his father:

15
      I only know my father as a American.  Living in America.
16    Enjoying the blessings of America.

17    Exhibit D.  Finally, Rolando's 18 year old son writes this:

18    I am a student and work part time.  My father has lived with me
      my whole life.  I know my father as a American.  This is all we
19    know, the United States. . .  I know my father as a hard worker, a
      family man that loves his family.  He has taken me to school,
20    picked me up from school, he has been there for me growing up
      through my teen years.  My dad has taken me to work, taught me
21    to work as a painter.  He has taken me to church and he has taught
      me to respect myself and to respect others.  My dad has taken me
22    on vacations to Disneyland. . . we've lived in America our whole
      lives.

23
      Exhibit E. A sentence of 42 months is appropriate based upon the fact that Rolando is culturally
24
      assimilated.
25

26    *United States v. Baca Ruiz*, CR 07-00285 CW
      Defendant's Sentencing Memorandum

In addition, courts have determined that a below guideline sentence may be warranted because of the fact that an illegal alien may be facing more severe prison conditions than non-aliens. *See, e. g. United States v. Navarro-Diaz*, 420 F.3d 581 (6th Cir. 2005)(in illegal reentry case possible departure where defendant punished more harshly and not eligible for half way house at end of sentence); *United States v. Davoudi,* 172 F.3d 1130 (9th Cir. 1999)(court has discretion to depart where deportable alien may be unable to take advantage of security designation and six month's home confinement); *United States v. Farouil*, 124 F.3d 838 (7th Cir. 1997)(court could consider whether defendant's status as deportable alien might result in unusual or exceptional hardship in conditions of confinement).

Finally, family circumstances is another factor which the Court should consider when it looks at the history and characteristics of the defendant under 18 U.S.C. §3553(a)(1).  The letters from Mr. Baca Ruiz's family make it clear that his incarceration affects his children greatly. *See*, *e.g.*, Exhibit B ("It's a hardship to have my father be in jail. . every child needs their father"); Exhibit C ("My father means so much to me and is a big part of my life.").

The Court should consider the effect on Rolando Baca Ruiz's family which his absence would have.  This is especially true where the family is planning to relocate to Mexico to be with him once he is released from custody and deported.  A lesser sentence will allow the family to be together sooner.  A sentence of 42 months is more than adequate.

**3.    A prison sentence is not needed for adequate deterrence, respect for the law or just punishment**

A sentence of 42 months would adequately promote respect for the law and provide just punishment.  It is also sufficient for adequate deterrence.  The last sentence of 30 months in custody deterred Rolando and at that time his family decided to move to Mexico. The letters show that despite the difficulties this presented, the entire family is intending to move to Mexico

- 12 -

*United States v. Baca Ruiz*, CR 07-00285 CW
Defendant's Sentencing Memorandum

1   this time so that they can remain together as a family.  Under these circumstances, a sentence of

2   42 months will provide respect for the law, just punishment and adequate deterrence.

3       **4.      A prison sentence of 42 months adequately will protect the public**

4       A custodial sentence of 42 months will adequately protect the public.  Rolando has never

5   touched or hurt his wife and knows that his conduct is not acceptable.  Nonetheless, Rolando is

6   not a threat to others in the community.  A sentence of 42 months is adequate to protect the

7   community from harm.

8                                   **CONCLUSION**

9       For the reasons described above, Rolando Baca Ruiz urges the Court to sentence him to

10  42 months in custody.

11

12  DATED: November 5, 2007

13

14                                   Respectfully submitted,

15                                   BARRY J. PORTMAN
                                     Federal Public Defender

16                                        /S/

17                                   JOYCE LEAVITT
                                     Assistant Federal Public Defender

18

19

20

21

22

23

24

25

26  *United States v. Baca Ruiz*, CR 07-00285 CW
    Defendant's Sentencing Memorandum